IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CURTIS LEE WATSON,

        Plaintiff,

vs.                                                            No. CIV 00-548 MCA/LFG

CORRECTIONS CORPORATION OF
AMERICA,

        Defendant.

# MAGISTRATE JUDGE'S ANALYSIS
# AND RECOMMENDED DISPOSITION[1]

## Introduction

This is a *pro se, informa pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Curtis Lee Watson ("Watson"). Watson currently is incarcerated at the United States Penitentiary in Coleman, Florida. His Complaint[2] [Doc. 6], filed May 19, 2000, alleges that, while incarcerated at the Torrance County Detention Facility in Estancia, New Mexico (operated by Defendant Corrections Corporation of America "CCA"), he was exposed to dangerous levels of

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Watson's May 19 Complaint actually is his first amended Complaint although he did not caption it as such.

1

second-hand cigarette smoke in violation of his Eight Amendment right to be free from cruel and unusual punishment.

This matter comes before the Court on Defendant CCA's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. 36], filed May 10, 2001. CCA argues that Watson's sole remaining claim[3] for violation of his Eighth Amendment rights should be dismissed, under Rule 12(b)(6) because Watson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). In the alternative, CCA contends that it is entitled to summary judgment on the Eighth Amendment claim because Watson cannot demonstrate a genuine issue of material fact to show that he was exposed to unreasonably high levels of second-hand smoke or that prison authorities acted with "deliberate indifference" to his plight.

## Exhaustion of Administrative Remedies

CCA argues that Watson's claims should be dismissed in that he failed to comply with the requirements of 42 U.S.C. § 1997e(a). This section mandates that no action alleging a violation of federal law may be brought by a prisoner confined in a jail, prison or other correctional facility, relating to any aspect of his or her incarceration, unless the prisoner has exhausted institutional administrative remedies, regardless of the remedy sought. 42 U.S.C. § 1997e(a); Booth v. Churner, 121 S.Ct. 1819, 1825 (2001).

---

[3]Watson initially sought to bring a class action against CCA and Defendant Republic Tobacco Company of Chicago, asserting that his Eighth Amendment and Fourteenth Amendment rights had been violated. He also alleged that Defendants wrongfully dispensed tobacco products in the prison. [*See* Doc. 1, 6, 11.] In a Memorandum Opinion and Order, filed November 2, 2000 [Doc. 22], the District Court dismissed Watson's Fourteenth Amendment claims, denied his request for class certification, dismissed the wrongful dispensing of tobacco claim and dismissed Defendant Republic Tobacco Company of Chicago. Thus, the sole remaining claim is Watson's Eighth Amendment claim related to exposure to second-hand smoke, as alleged against CCA.

In this case, Watson's claims for money damages arise directly from alleged poor prison conditions. While there may have been some question in the past whether a prisoner, who sought only monetary relief, was required to exhaust administrative remedies, that uncertainty no longer exists. Booth, 121 S.Ct. at 1825.

Here, Watson contends he exhausted remedies by asking if there was a non-smoking unit and learning that such a unit would be opened at some unknown time. Watson appears to assert that his request regarding a non-smoking unit amounted to exhaustion because he learned that there was no relief possible. Watson's "question" simply fails to qualify as administrative exhaustion. Moreover, no "futility" exception to the exhaustion requirement of § 1997e(a) exists. Massey v. Helman, 196 F.3d 727, 733 (7th Cir.1999). The purpose of the exhaustion requirement is to provide an efficient, expeditious and economical way for prison officials to address matters relating to the prison conditions giving rise to the complaint. Watson failed to exhaust administrative remedies, and therefore, this complaint should be dismissed on that ground alone.

If, however, through some stretch of imagination, the court could conclude that Watson exhausted his administrative remedies, his Eighth Amendment claim would still be dismissed on the grounds asserted by CCA in its motion for summary judgment. After careful consideration of CCA's motion, accompanying brief and exhibits [Doc. 36, 37], Watson's response[4] [Doc. 49], CCA's two

---

[4]Watson characterized his "response" as "Reply of Plaintiff Being Awarded Judgement Against Defendant for Plaintiff's Being Exposed to the Conduct Involving Smoking at the Torrance county Detention Facility." CCA filed a first Reply on June 5, 2001, arguing that dismissal was appropriate because Watson had not filed a response. [Doc. 40.] The Court permitted Watson to file a response after the deadline [Doc. 48]. After Watson's response was filed, CCA filed a second Reply. [Doc. 51.]

replies [Doc. 40, 51], and the Martinez Report[5] [Doc. 35] and related pleadings [Doc. 38], along with the pertinent law, I conclude that CCA's Motion to Dismiss and/or Motion for Summary Judgment can also be granted on the merits and that Watson's Complaint should be dismissed with prejudice.

## Summary Judgment Standard

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and to determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The court does not weigh evidence nor does it decide the issues of fact, but rather, only determines if there is an issue that must be resolved at trial.

Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The Court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999), *cert. denied,* 529 U.S. 1110, 120 S. Ct. 1964 (2000).

---

[5]On February 12, 2001, the Court ordered Defendant to submit a Martinez report regarding Watson's allegations. The parties were notified that the Martinez report could be used in deciding whether to grant summary judgment on Watson's claims. [Doc. 29.] CCA submitted the report. [Doc. 35.] Watson filed a response, with attachments, to the Court's Order allowing the Martinez to be filed under seal. [Doc. 38.]

**Factual Background**

Watson does not appear to contest any of the material facts presented by CCA in its brief. [Doc. 37 at pp. 5-6.] Watson was transferred to Torrance County Detention Facility ("TCDF") on April 27, 1999, and remained at that facility until about May 22, 2001, according to Watson's notice of change of address. [Doc. 39.] He was housed in a cell without a roommate from April 27, 1999 until April 4, 2001. On April 5, 2001, Watson was assigned a non-smoking cell mate, who apparently shared his cell until Watson was transferred out of TCDF in May 2001.

Smoking is permitted in the common areas of the pod in which Watson's cell was located at TCDF. Watson claims that living quarters were exposed to "the health risk" of second-hand smoke, and he essentially seeks a smoke-free environment. [Doc. 49.] He also alleges that he was born with asthma although he admits he has not suffered any attacks of asthma for years and is not claiming he suffers from asthma today. Medical records show that as of April 1999, Watson did not believe he currently or previously had asthma or any other respiratory problems. [Doc. 37, Ex. D at pp. 1, 2.] Watson's chest x-ray, taken in July 1999, was normal. [Doc. 37, Ex. D at p. 69.] None of Watson's numerous medical records, up until February 2001, reveal complaints about second-hand smoke or Environmental Tobacco Smoke ("ETS")[6]

On February 27, 2001, Watson's medical record notes that he requested a no-smoking cell because he was allergic to smoke and it made him feel nauseated. An examination of his lungs that day showed that they were clear. [Doc. 37, Ex. D at p. 68.] As of that date, Watson still did not have a roommate, although he apparently believed he was going to be assigned a cell mate. As a result of

---

[6]One medical record, dated in June 1999, notes that Watson was concerned about a chest x-ray taken in 1995 that he was told was abnormal. The notes do not indicate anything further about this earlier x-ray. In any event, the July 1999 chest x-ray was normal.

5

his complaints on February 27, Watson was given written medical approval for a non-smoking cell for an indefinite period of time. [Doc. 37, Ex. D at p. 70.] Several months later, a non-smoker began sharing Watson's cell.

On October 7, 1999, approximately six months after Watson's arrival, TCDF issued a memorandum that designated smoking and non-smoking areas. [Doc. 37, Ex. B.] The memorandum, that CCA characterizes as a policy, permits smoking in inmate housing units, inmate recreation yards, staff lounge and outside. Smoking is prohibited in medical and visitation areas, bathrooms, culinary floor, corridors, west gym, libraries, multipurpose building, and the lobby, as well as other areas.

Watson never filed a grievance regarding complaints about ETS or second-hand smoke. He does assert, however, that he asked on a date uncertain if TCDF had a non-smoking unit and apparently was told "by various parties" that a non-smoking unit would be opened at some point. [Doc. 49.]

Watson presents no evidence of how much smoke he was exposed to or, for example, which cells around him at TCDF housed smokers. He states generally that he made the non-smoking request so that "he could at least get some sleep without smoking being allowed in the cell in the housing unit." [Doc. 49.] He admits that his request for a non-smoking cell or cell mate was honored. Indeed, he characterizes his "greater concern" as being the "policy of providing inmates with smoking tobacco to insure persons addicted to the smoking habit were kept addicted. . . ."

**Discussion**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480 (1993). Specifically, an inmate may state a claim under the Eighth Amendment by

6

alleging that prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his health." Id. at 35, 113 S.Ct. at 2481. However, an inmate does not have a constitutional right to a completely smoke-free correctional facility. Barry v. Wilson, 91 F.3d 159 (Table, text in Westlaw), No. 95-1419, 1996 WL 366217, at *2 (10th Cir. July 2, 1996).

The Supreme Court has set forth a two-prong inquiry to determine whether an Eighth Amendment claim, based on exposure to second-hand smoke, may proceed. Thus, to defeat CCA's Motion for Summary Judgment, Watson first must raise a genuine issue of fact to show that he was exposed to "*unreasonably high levels* of ETS." Id. at 35, 113 S.Ct. at 2482 (emphasis added); Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001).

> In assessing this first factor, the court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm. The court also has to determine 'whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'

Richardson, 260 F.3d at 498 (relying on Helling, 509 U.S. at 36, 113 S.Ct. at 2482) (emphasis in original.) Second, Watson also must offer a genuine issue of fact to demonstrate that prison authorities acted with a "deliberate indifference" to his plight. Id. A prison official is "deliberately indifferent" when he "knows of and disregards an excessive risk to inmate health or safety." Mervin v. Furlong, CIV No. 99-1135, 2000 WL 248472 at *2 (10th Cir. March 6, 2000) (*relying on and quoting* Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

In this case, Watson fails to raise a genuine issue of material fact with respect to either prong of the test set forth in Helling, either of which would subject his claim to dismissal. First, Watson offers no evidence to show objectively, as he must, that he was exposed to "unreasonably high levels"

7

of second-hand smoke. In fact, Watson does not deny that he was housed alone in his cell for most of the two years he was at TCDF, or that he later was assigned a non-smoking cell mate. In addition, Watson presents no evidence to demonstrate how much smoke he was exposed to from nearby cells or at what times of the day or night he was exposed to ETS. There simply is no evidence to suggest that Watson was enduring an "unreasonably high exposure" to ETS. Accordingly, the Court has no basis to conclude that there is a "seriousness of potential harm" or that these circumstances "violate contemporary standards of decency." *See* Richardson, 260 F.3d at 498 (sporadic and fleeting exposure to ETS might be unwelcome and unpleasant but it does not amount to "unreasonably high levels of ETS," nor would such symptoms as coughing and nausea reach the level of a constitutional violation); *See also* Oliver v. Deen, 77 F.3d 156, 158 (7th Cir. 1996) (Eighth Amendment claim rejected by asthma sufferer who alleged that smoke caused him nausea, dizziness, shortness of breath and wheezing). *Compare* Heller, 509 U.S. at 28, 113 S.Ct. at 2478 (prisoner shared a cell with an inmate who smoked five packs of cigarettes a day.)

Second, Watson's claim fails because he cannot raise a genuine issue of material fact to demonstrate that prison officials acted with "deliberate indifference." To the contrary, Watson admits that when he complained about smoke in February 2001, he was given a medical approval for an indefinite period of time to have a non-smoking cell. Indeed, during the limited time he shared his cell, he was housed with a non-smoker. Moreover, Watson cannot argue that prison officials knew of his "allergy" to smoke and deliberately disregarded it. Watson's medical records, that he filled out, do not show any record of asthma or respiratory problems. Nor did Watson ever file a grievance complaining of smoke at TCDF. Apparently, the only question Watson asked of "prison officials"

8

in this regard was whether there was a non-smoking unit. This type of inquiry or remark cannot be construed as placing prison officials on notice of a condition that they then deliberately ignored.

In addition, the adoption of a policy designating non-smoking areas "bear[s] heavily on the inquiry into deliberate indifference." Helling, 509 U.S. at 36, 113 S.Ct. at 2482. It is undisputed that TCDF implemented a policy identifying smoking and non-smoking areas and that TCDF makes every effort to place non-smokers together in their living quarters. Watson has not brought forward any evidence to show that TCDF is not adhering to or enforcing its policy. Finally, TCDF accommodated Watson's request for a non-smoking cell immediately upon that request. *See* Clemmons v. Bohannon, 956 F.2d 1523, 1528 (10th Cir. 1992) (prison officials' efforts to accommodate prisoner's request regarding ETS satisfied prison's responsibility.)

**Conclusion**

Watson has failed to bring forward any admissible evidence to show that he was exposed to unreasonably high levels of second-hand smoke and/or that prison officials at TCDF acted with deliberate indifference to his plight. Accordingly, summary judgment should be entered in favor of Defendant CCA on the sole remaining Eighth Amendment claim because there is no genuine issue of material fact that requires this case to proceed to trial.

**Recommended Disposition**

THAT Defendant CCA's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. 36] be granted and that Plaintiff Curtis Lee Watson's Complaint [Doc. 6] be dismissed, with prejudice.

*[signature]*
Lorenzo F. Garcia
United States Magistrate Judge